E-FILED; Harford Circuit Court
Docket: 10/25/2022 12:13 PM; Submission: 10/25/2022 12:13 PM

## IN THE CIRCUIT COURT OF MARYLAND
## FOR HARFORD COUNTY

| | | |
|---|---|---|
| **GEORGE P. PATITSAS** | * | |
| 400 Country Ridge Circle | * | |
| Bel Air, MD 21015 | * | Case No.: |
| | * | |
| **Plaintiff** | * | C-12-CV-22-000727 |
| | * | |
| v. | * | |
| | * | |
| **TOWSON LUXURY IMPORTS, LLC** | * | |
| **D/B/A BMW OF BEL AIR** | * | |
| 700 Kenilworth Drive | * | |
| Towson, MD 21204 | * | |
| **Serve:** | * | |
| CSC-Lawyers Incorporating Service Co. | * | |
| 7 St. Paul Street | * | |
| Suite 820 | * | |
| Baltimore, MD 21202 | * | |
| | * | |
| **and** | * | |
| | * | |
| **TRUIST BANK** | * | |
| 214 North Tryon Street | * | |
| Charlotte, NC 28202 | * | |
| **Serve:** | * | |
| CSC-Lawyers Incorporating Service Co. | * | |
| 7 St. Paul Street | * | |
| Suite 820 | * | |
| Baltimore, MD 21202 | * | |
| | * | |
| **Defendants** | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### COMPLAINT

**NOW COMES** Plaintiff, George P. Patitsas ("George Patitsas"), by and through his undersigned attorneys, Whitney, LLP, and files this Complaint against Defendants Towson Luxury Imports, LLC d/b/a BMW of Bel Air ("BMW of Bel Air") and Truist Bank, and in support thereof states as follows:

1



## FACTS AND ALLEGATIONS COMMON TO ALL COUNTS

1.      AutoNationDirect.com, Inc. ("AutoNation"), the largest automotive retailer in the United States, advertises itself as "America's largest and most admired automotive retailer" on its website, www.autonation.com. On another page, https://www.autonation.com/our-purpose, AutoNation continues with "Your satisfaction drives everything we do" and represents that they are "singularly focused on transforming the business of automotive retail, establishing a new standard for excellence in sales and service."

2.      It appears that AutoNation, which owns Defendant BMW of Bel Air, needs to update its website. An accurate description would include a disclosure that AutoNation violates Maryland law and would describe the ongoing saga in which AutoNation continues to ignore George Patitsas after selling him a Certified Pre-Owned BMW to which it did not possess the title and has failed to provide the title for approximately four months.

3.      At all times relevant hereto, Plaintiff George Patitsas was and is a resident of Harford County, Maryland.

4.      At all times relevant hereto, Defendant BMW of Bel Air was and is a limited liability company, organized and existing pursuant to the laws of the State of Delaware with its principal place of business at 700 Kenilworth Drive, Towson, MD 21204 and was and is engaged in the business of selling new BMWs and used vehicles at its dealership located at 716 Bel Air Road, Bel Air, MD 21014 (the "dealership").

5.      Upon information and belief, at all times relevant hereto, Defendant Truist Bank was and is a corporation and nationwide financial institution with its principal place of business located 214 North Tryon Street, Charlotte, NC 28202, and was and is engaged in the business of

financing retail vehicle purchases and collecting loan payments in connection with the sale of new and used vehicles sold at dealerships across the United States, including but not limited to financing Plaintiff's purchase of the BMW 5 Series and collecting loan payments from him.

6.      At all times relevant hereto, Defendants BMW of Bel Air and Truist Bank directly and/or through their actual and/or apparent agents, conducted business in the State of Maryland and in Harford County.

7.      On June 29, 2022, George Patitsas purchased two BMW vehicles from the dealership: a 2019 BMW X5 (the "BMW X5"), and a 2018 BMW 5 Series, VIN WBAJB9C55JB286280 (the "BMW 5 Series").

8.      While he timely received the title to the BMW X5, this case is being filed as a result of BMW of Bel Air's failure to obtain the title prior to the sale of the BMW 5 Series, and ongoing failure to register and title the BMW 5 Series in his name.

9.      George Patitsas purchased the BMW 5 Series for a Cash Price of $52,818.90. He was charged $499 for a Dealer Processing Charge, $29.94 in Government Taxes Not Included in Cash Price, $50 in License and Registration Fees, and $120 in Title Fees.  He traded in his prior 2018 BMW 5 Series, and BMW of Bel Air paid off Plaintiff's outstanding loan on that car and credited the balance of $3,157.29 to the Cash Price of the BMW 5 Series.  George Patitsas financed the remaining balance of $50,360.45 through Truist Bank, at an APR of 4.5%, payable in 72 monthly installments of $792.93 beginning on August 8, 2022.

10.      During the purchase process, BMW of Bel Air represented that it would promptly submit the necessary titling and registration paperwork to the Maryland Motor Vehicle Administration ("MVA"), and that he would soon receive the title in the mail. George Patitsas relied on those statements in deciding to purchase the BMW 5 Series.

11.     George Patitsas received copies of the sales documents and signed what he was provided with. Thereafter, he took delivery of both vehicles he purchased from BMW of Bel Air and returned home.

12.     The next day, July 1, 2022, George Patitsas was approved to refinance the loans on the vehicles he had purchased from BMW of Bel Air the day before. The refinancing offers carried substantially lower interest rates than his current financing agreements carried, and would save him thousands of dollars over the lifetime of the loans, including approximately $125/month on the BMW 5 Series, and approximately $9,000 over the life of that loan. However, he could not accept the offers until he obtained the certificate of title for the vehicles, and the offers were set to expire on September 1, 2022.

13.     George Patitsas received the title to the BMW X5 approximately two weeks later, on or around July 14, 2022. He promptly refinanced the loan on the BMW X5 at the lower interest rate once he received the title.

14.     George Patitsas then called Jason Ruzek, BMW of Bel Air's salesperson who facilitated his purchases, to inquire about the title to the BMW 5 Series. Jason Ruzek responded that sometimes the title can take a month or so to process, and that the coronavirus was delaying the procedure, but that the title should arrive soon.

15.     However, several more weeks passed, and George Patitsas still had not received the title to his BMW 5 Series. He set an appointment with the MVA for August 12, 2022 to see if he could obtain the title directly from the MVA.

16.     He was dismayed when he was informed by the MVA that he had not yet, and could not, obtained the title because BMW of Bel Air had not yet sent the proper documentation to the MVA to complete the title work.

4

17.     George Patitsas left the MVA and went directly to the dealership, where he spoke with BMW of Bel Air' sales manager, "Dan," about the issue. George Patitsas asked if they could expedite the title process, but Dan responded vaguely and did not agree to anything.

18.     With the deadline for the refinancing offer fast approaching, George Patitsas did everything he could to facilitate the registration and titling process, including corresponding via email with BMW of Bel Air and AutoNation's corporate office.

19.     Leading up to the September 1, 2022 deadline for the refinancing offer, George Patitsas was in regular email contact with Chris Dunkes, BMW of Bel Air's General Manager. Over the course of these emails, Chris Dunkes informed George Patitsas that the titling delay was due to the fact that BMW of Bel Air had not yet received the title from the California dealership they purchased the BMW 5 Series from.

20.     George Patitsas explained to Chris Dunkes the urgency of obtaining the title before September 1, 2022, and even offered to come to the dealership and purchase a different car if BMW of Bel Air could not provide the title in time.

21.     Despite Chris Dunkes' representations that BMW of Bel Air was working to get the title to him, September 1, 2022 came and went without George Patitsas receiving the BMW 5 Series' title.

22.     As a result of BMW of Bel Air's failure to timely provide George Patitsas with the title to the BMW 5 Series, which upon information and belief is due to BMW of Bel Air's failure to timely obtain the title from the California dealership it originally purchased the BMW 5 Series from—"BMW of Mountain View," according to Chris Dunkes—George Patitsas was unable to accept the refinancing offer, which will cost him thousands of dollars over the lifetime of the loan on the BMW 5 Series.

23.    George Patitsas is at a loss and significantly upset by BMW of Bel Air's inability and failure to produce the title, which he paid BMW of Bel Air to do.

24.    Maryland law and Maryland's administrative regulations impose strict requirements on dealers regarding the titling of vehicles, both prior to and after the sale of a vehicle to an individual.

25.    The Code of Maryland Regulations ("COMAR") 11.12.01.10, titled "Records" requires, in pertinent part:

A.  Records of the dealer business activities shall be preserved in their original form or a format approved by the Administration for a period of time as required by Transportation Article, § 15-105, Annotated Code of Maryland.

B.  The records shall be accessible at the location approved by the Administration. If location is other than the licensed location, an electronic or other copy must be maintained at the licensed location and consist of but not be limited to:

...

    (5) An assigned title for each untitled vehicle in the dealer's inventory; ...

(emphasis added).

26.    The Md. Code Ann., Transp., § 13-113 titled "Transfers to or from dealers or dismantlers or recyclers generally" requires, in pertinent part:

(a) Certificate of title to be obtained by transferee dealer. -- If the transferee of a vehicle is a licensed dealer who holds the vehicle for sale, the dealer shall, within 20 days of the date of the transfer to the dealer of the vehicle, obtain the certificate of title of the vehicle, which shall contain an assignment and warranty of title executed by the former owner.

(b) Certificate retained until sale or transfer of ownership. -- If the transferee of a vehicle is a licensed dealer who holds the vehicle for sale, the dealer shall retain the certificate of title in his possession until the further sale or transfer of ownership of the vehicle.

...

6

(e) Transfer by dealer to one other than another dealer. –

(1) If a licensed dealer holds a vehicle for sale and transfers the vehicle to someone other than another licensed dealer who holds the vehicle for sale, the dealer shall:
> (i) Execute an assignment and warranty of title to the transferee in the manner and on the form that the Administration requires; and
> (ii) Comply with the provisions specified in this subsection.

. . .

**(3) If the vehicle is a Class A (passenger) vehicle . . . and is to be registered and titled in this State, the transferring dealer shall:**
> **(i) Obtain from the transferee a completed application and collect all taxes and fees required for titling the vehicle; and**
> **(ii) Within 30 days of the date of delivery of the vehicle, send or electronically transmit them, together with every other document or data required by §§ 13-104, 13-104.1, and 13-108.1 of this subtitle, to the Administration.**

Emphasis added.

27.     The Md. Code Ann., Transp., § 13-104, titled "Application for certificate of title – In General" requires, in pertinent part:

> (e) The application shall be accompanied by each certificate of title of the vehicle that previously may have been issued by this or any other state and still is outstanding.

28.     Maryland dealers, therefore, must obtain within 20 days the certificate of title of a vehicle they purchase for resale, which shall contain an assignment and warranty of title executed by the former owner; and, once they sell a vehicle that will be titled in Maryland, must transmit all required documentation to title the vehicle, including "each certificate of title of the vehicle that previously may have been issued . . . and still is outstanding" to the MVA within 30 days.

29.     Upon information and belief, BMW of Bel Air did not obtain the certificate or assignment of title for the BMW 5 Series prior to selling it to George Patitsas, and did not

transmit to the MVA all documentation necessary to title the BMW 5 Series within 30 days of delivery.

30.     Upon information and belief, BMW of Bel Air sold the BMW 5 Series to George Patitsas despite knowing it did not possess the title.

31.     Maryland protects consumers with a warranty of title under Md. Code Ann., Com. Law § 2-312, et seq.:

> § 2-312. Warranty of title and against infringement; buyer's obligation against infringement
>
> (1) Subject to subsection (2) there is in a contract for sale a warranty by the seller that
>
>> (a) The title conveyed shall be good, and its transfer rightful; and
>> (b) The goods shall be delivered free from any security interest or other lien or encumbrance of which the buyer at the time of contracting has no knowledge.
>
> (2) A warranty under subsection (1) will be excluded or modified only by specific language or by circumstances which give the buyer reason to know that the person selling does not claim title in himself or that he is purporting to sell only such right or title as he or a third person may have.
>
> (3) Unless otherwise agreed a seller who is a merchant regularly dealing in goods of the kind warrants that the goods shall be delivered free of the rightful claim of any third person by way of infringement or the like but a buyer who furnishes specifications to the seller must hold the seller harmless against any such claim which arises out of compliance with the specifications.

32.     The principal function of the warranty of title is to give legal effect to a buyer's reasonable expectations that they are purchasing property with a good, clean title.

33.     Whereas here, George Patitsas, as BMW of Bel Air's customer, had a reasonable and legally protected expectation of receiving the BMW 5 Series with a clear title, and upon information and belief, BMW of Bel Air did not have the title at the time of sale, and did not provide the MVA with all documentation necessary to title the BMW 5 Series within the

statutory period of time of 30 days, BMW of Bel Air breached the warranty of title arising under Md. Code Ann., Com. Law § 2-312, et seq.

34.    As a result of BMW of Bel Air selling to George Patitsas the BMW 5 Series subject to the problems stated above and failing to comply with Maryland law and Maryland administrative regulations, George Patitsas has suffered from economic loss.

35.    George Patitsas has suffered emotional distress with physical manifestations, including but not limited to anxiety, stress, headaches, nausea, and sleeplessness, as the result of BMW of Bel Air selling to George Patitsas the BMW 5 Series subject to the problems stated above.

**COUNT I**
**FRAUD AND FRAUDULENT INDUCEMENT**
**<u>BMW OF BEL AIR</u>**

36.    Plaintiff incorporates by reference all previous paragraphs as if fully set forth herein.

37.    The Maryland Transportation Code Ann., § 15-312(b) titled "Prohibited Acts - - Vehicles Sales Transactions," reads as follows: "Making material misrepresentations in obtaining vehicle sales contracts. - A dealer or an agent or employee of a dealer may not make any material misrepresentations in obtaining a vehicle sales contract."

38.    The Maryland Transportation Code Ann., § 15-312(c) titled "Prohibited Acts - - Vehicles Sales Transactions," reads as follows: "Fraud - - A dealer or an agent or employee of a dealer may not commit any fraud in the execution of or any material alteration of a contract, power of attorney, or other document incident to a sales transaction.

39.    Prior to the sale, and in order to induce Plaintiff to purchase the BMW 5 Series, BMW of Bel Air represented to Plaintiff that they could legally sell the BMW 5 Series to

Plaintiff as is done in the normal course of business at a car dealership, and that they would facilitate the registration and titling of the BMW 5 Series for Plaintiff in a short and lawful period of time, and in exchange for Plaintiff's payment for those services. All of these representations are material facts and are referred to in Count I as the "material facts."

40.    At the time BMW of Bel Air made the representation of materials facts to Plaintiff, they were aware that the representations were false.  Instead, BMW of Bel Air knew that they had not obtained the title to the BMW 5 Series, and would not be able to facilitate the registration and titling of the BMW 5 Series in a lawful period of time or as represented.

41.    Alternatively, BMW of Bel Air made the representations of material facts with such reckless indifference to the truth that it would be reasonable to charge BMW of Bel Air with knowledge of their falsity.

42.    At the time BMW of Bel Air made the false representation of material facts, they intended that Plaintiff would act in reliance on the material misrepresentations and enter into the purchase agreement for the BMW 5 Series.

43.    Plaintiff reasonably and justifiably relied on BMW of Bel Air's material misrepresentations in agreeing to purchase the BMW 5 Series.

44.    Had BMW of Bel Air not misrepresented the material facts, Plaintiff would not have agreed to purchase the BMW 5 Series.

45.    As a direct and proximate result of BMW of Bel Air's misrepresentation and fraud, Plaintiff has suffered economic damages and emotional distress, with physical manifestations thereof.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor in an amount greater than seventy-five thousand dollars ($75,000), including

10

compensatory damages, punitive damages, costs, and such other and further relief as the nature of this case requires.

### COUNT II
### FRAUDULENT NON-DISCLOSURE OR CONCEALMENT
### BMW OF BEL AIR

46.     Plaintiff incorporates by reference all previous paragraphs as if fully set forth herein.

47.     BMW of Bel Air, as a licensed Maryland car dealer, had a duty to comply with Md. Code Ann., Transp., § 15-312(b) titled "Prohibited Acts - - Vehicles Sales Transactions," which reads as follows: "Making material misrepresentations in obtaining vehicle sales contracts. - A dealer or an agent or employee of a dealer may not make any material misrepresentations in obtaining a vehicle sales contract."

48.     BMW of Bel Air had a duty to disclose material facts if the failure to do so would deceive or tends to deceive, pursuant to Md. Code Ann., Comm. Law, 13-301(3); and a duty to not suppress or omit any material fact with the intent that a consumer rely on the same in connection with the promotion or sale of any consumer goods, consumer realty, or consumer service, Md. Code Ann., Comm. Law, § 13-301(9)(i).

49.     Despite these duties, BMW of Bel Air intentionally concealed the material facts that BMW of Bel Air did not physically possess the title at the time of sale, and that BMW of Bel Air would not be able to facilitate the registration and titling of the BMW 5 Series in a lawful period of time.

50.     BMW of Bel Air intentionally concealed the material facts with the intent to induce Plaintiff to act differently from how Plaintiff would have acted had he known the true facts.

51.     Because of the concealment Plaintiff acted in a manner different from how he would have acted had he known the true facts. Had Plaintiff known of the material facts, he would never have agreed to purchase the BMW 5 Series.

52.     As the result of BMW of Bel Air's concealment, Plaintiff has suffered economic damages and emotional distress, with physical manifestations thereof.

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court enter judgment in his favor in an amount greater than seventy–five thousand dollars ($75,000), including compensatory damages, punitive damages, costs, and such other and further relief as the nature of this case requires.

### COUNT III
### VIOLATION OF MARYLAND'S CONSUMER PROTECTION ACT
### BMW OF BEL AIR

53.     Plaintiff incorporates by reference all previous paragraphs as if fully set forth herein.

54.     The Maryland Consumer Protection Act ("CPA"), Md. Code Ann., Comm. Law, §13-301, et seq., prohibits unfair or deceptive trade practices. Unfair or deceptive trade practices include any:

13-301(1) False, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers;

13-301(3) Failure to state a material fact if the failure deceives or tends to deceive;

13-301 (5) Advertisement or offer of consumer goods, consumer realty, or consumer services:

12

(i)Without intent to sell, lease, or rent them as advertised or offered;

13-301(9) Deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with:

    (i)The promotion or sale of any consumer goods, consumer realty, or consumer service;

55.    In order to induce Plaintiff to purchase the BMW 5 Series, BMW of Bel Air represented to Plaintiff that BMW of Bel Air could sell the BMW 5 Series to Plaintiff as is done in the normal course of business at a car dealership, and that they would facilitate the registration and titling of the BMW 5 Series for Plaintiff in a short and lawful period of time, and in exchange for Plaintiff's payment for those services. All of these representations are material facts, are untrue, and constitute unfair or deceptive trade practices.

56.    BMW of Bel Air failed to disclose to Plaintiff, prior to the sale of the BMW 5 Series, that BMW of Bel Air did not physically possess the title at the time of sale, and would not be able to facilitate the registration and titling of the BMW 5 Series for Plaintiff in a short and lawful period of time. The failure to disclose this information, which is important for a consumer to know before deciding to purchase a vehicle, is a material fact and an unfair or deceptive trade practice.

57.    BMW of Bel Air represented to Plaintiff, prior to the sale of the BMW 5 Series, that they would facilitate and provide the registration and titling for the BMW 5 Series for Plaintiff within a timely manner, and charged him based on those representations and for performing those services, yet did not perform them timely and have not yet rendered them at all, which is a material fact and an unfair or deceptive trade practice.

58.     In deciding to purchase the BMW 5 Series, Plaintiff relied on BMW of Bel Air's false statements, concealments, omissions, misrepresentations, and failure to state material facts.

59.     BMW of Bel Air therefore violated the CPA.

60.     Section 13-408 of the CPA provides a cause of action for damages for violations of the CPA.

61.     As a direct and proximate result of BMW of Bel Air's violations of the CPA, Plaintiff suffered consequential economic damages and emotional distress.

62.     Section 13-408(b) of the CPA also provides that the Court may award reasonable attorneys' fees to any person who receives an award of damages under the CPA.

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court enter judgment in his favor in an amount greater than seventy–five thousand dollars ($75,000), including compensatory damages and reasonable attorney's fees pursuant to Md. Code Ann., Comm. Law, § 13-408(b); and costs, and such other and further relief as the nature of this case requires.

## COUNT IV
## VIOLATION OF THE WARRANTY OF TITLE
## BMW OF BEL AIR

63.     Plaintiff incorporates by reference all previous paragraphs as if fully set forth herein.

64.     Maryland protects consumers with a warranty of title with a warranty of title under Md. Code Ann., Comm. Law §2-312, et seq.

65.     Whereas here, Plaintiff, as BMW of Bel Air's customer, had a reasonable and legally protected expectation of receiving the BMW 5 Series with a clear title, and upon information and belief, BMW of Bel Air did not have or provide clear title, BMW of Bel Air breached the warranty of title arising under Md. Code Ann., Comm. Law § 2-312, et seq.

14

66.     As a result of BMW of Bel Air's breach of the warranty of title, Plaintiff sustained the losses and damages described herein.

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court rescind the contract for the BMW 5 Series and award damages, and such other and further relief as the nature of this case requires.

## COUNT V
## NEGLIGENT MISREPRESENTATION
## BMW OF BEL AIR

67.     Plaintiff incorporates by reference all previous paragraphs as if fully set forth herein.

68.     BMW of Bel Air owed a duty of care to Plaintiff, its customer, to act reasonably in connection with the sale of the BMW 5 Series to Plaintiff, and to provide the services that BMW of Bel Air represented that it would provide, and was paid to do, and do so in a timely and lawful manner, including abiding by the timelines and requirements set forth in COMAR and The Md. Code Ann., Transp., § 13-113, et seq.  The requirements include that Maryland dealers must obtain within 20 days the certificate of title of a vehicle they purchase for resale, which shall contain an assignment and warranty of title executed by the former owner; and, once they sell a vehicle that will be titled in Maryland, must transmit all required documentation to title the vehicle, including "each certificate of title of the vehicle that previously may have been issued . . . and still is outstanding" to the MVA within 30 days.

69.     BMW of Bel Air negligently made a false statement of material fact when it represented to Plaintiff that BMW of Bel Air would and could, in exchange for payment, promptly register and title the BMW 5 Series in connection with Plaintiff's purchase of the BMW 5 Series.

15

70.     BMW of Bel Air intended that Plaintiff would act in reliance on the statement.

71.     BMW of Bel Air knew that Plaintiff probably would rely on the statement, which, if false, would cause loss or injury to Plaintiff.

72.     Plaintiff justifiably acted in reliance on the statement.

73.     BMW of Bel Air failed to promptly and lawfully register and title the BMW 5 Series after Plaintiff's purchase of the BMW 5 Series.

74.     Plaintiff suffered damage as a result of BMW of Bel Air's negligence, including economic loss and emotional distress, with physical manifestations.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor in an amount greater than seventy–five thousand dollars ($75,000), including compensatory damages, costs, and such other and further relief as the nature of this case requires.


## COUNT VI
## BREACH OF CONTRACT AND DECLARATORY JUDGMENT
## FOR RECISSION
## BMW OF BEL AIR and TRUIST BANK

75.     Plaintiff hereby incorporates by reference all previous paragraphs as if fully set forth herein.

76.     Plaintiff entered into a contract with BMW of Bel Air for the sale and finance of the BMW 5 Series, and the contract was assigned to Truist Bank.

77.     Plaintiff relied on the representation made by BMW of Bel Air that BMW of Bel Air would promptly register and title the BMW 5 Series in deciding to purchase the BMW 5 Series.

78.   BMW of Bel Air did not disclose the material fact that it did not have physical possession of the title the BMW 5 Series from the prior owner at the time Plaintiff purchased the BMW 5 Series.

79.   Upon Plaintiff's discovery of the title issues with the BMW 5 Series, he immediately attempted to return the BMW 5 Series and purchase a different vehicle, but BMW of Bel Air refused to do so.

80.   BMW of Bel Air used misrepresentations, false representations and concealments in order to obtain the sale of the BMW 5 Series to Plaintiff, and materially breached the contract for the BMW 5 Series by failing to promptly register and title the BMW 5 Series.

81.   As the result of BMW of Bel Air's misrepresentations, false representations, concealments and breach of contract, Plaintiff seeks to rescind the contract for the BMW 5 Series.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor and rescind the contract for the BMW 5 Series, and award such other and further relief as the nature of this case requires.

## COUNT VII
## CONTRACT
## TRUIST BANK

82.   Plaintiff incorporates by reference all previous paragraphs as if fully set forth herein.

83.   Plaintiff hereby asserts against Truist Bank all of its claims and defenses against BMW of Bel Air, as provided for in the following provision of the Retail Installment Sale Contract between Plaintiff, BMW of Bel Air and Truist Bank:

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court enter judgment in his favor against Truist Bank for all sums he has paid to Truist Bank under the contract, reasonable attorneys' fees, and such other and further relief as the nature of this case requires.

Respectfully submitted,

*Daniel W. Whitney, Jr.*
Daniel W. Whitney (AIS #7911010359)
Daniel W. Whitney, Jr. (AIS #1212130286)
WHITNEY, LLP
Suite 750
409 Washington Avenue
Towson, Maryland 21204
410-583-8000 (ph)
800-893-1239 (fax)
dwhitney@whitneyfirm.com
dwhitneyjr@whitneyfirm.com
**Attorneys for Plaintiff**

## CERTIFICATE OF COMPLIANCE WITH MD RULE 20-201(h)

I CERTIFY that the attached submission does not contain any restricted information or, if it does contain restricted information, a redacted submission has been filed contemporaneously pursuant to Rule 20-201(h).

*Daniel W. Whitney, Jr.*
Daniel W. Whitney, Jr. (AIS #1212130286)